## DUDLEY v. FRONT STREET CABLE RY. CO. et al.

### (Circuit Court, D. Washington, N. D. March 24, 1896.)

NEGLIGENCE—STARTING STREET CAR.
   Plaintiff attempted to board a car on defendant's cable railway while it was standing near a street corner, waiting to take on passengers. The car was crowded, and persons were standing on the platform, and one on the step of the car. Just as plaintiff took hold of the railing of the platform and placed his foot on the step, the conductor (who was inside the car, and did not see plaintiff) gave the signal to go ahead. The car started, and, as it went round a curve at high speed, plaintiff's hold on the railing was broken before he had been able to secure a firm footing on the car, and he was thrown off and injured. *Held*, that the conductor was negligent in failing to ascertain that all passengers were on board before starting the car, and that defendant was liable.

At Law. Action by Christopher B. Dudley against the Front Street Cable-Railway Company, a corporation, to recover damages for personal injury caused by negligence. Findings and judgment for plaintiff.

John Arthur and J. Lindley Green, for plaintiff.
E. C. Hughes, for defendant.

HANFORD, District Judge. I find from the evidence in this case that on the night of November 3, 1894, the plaintiff, while attempt-

ing to get on a car operated by the defendant company, lost his footing as the car started forward, and in consequence the tibia of his right leg was fractured near the ankle joint. The defendant's line of railway curves from Front street into Pike, and runs the length of one block in Pike street, and then curves into Second street. The car was fairly loaded before reaching Pike street, and a stop was made a distance of about 30 feet from the beginning of the Second street curve, to take on other passengers. When the car stopped the plaintiff was some distance away, and in front of the car. He hastened to take the car, and, on reaching it, found the front end fully occupied, and then went briskly to the rear platform, which was somewhat crowded, the inside of the car being full,—so much so that a lady who stepped on the platform just ahead of the plaintiff, was obliged to remain standing on the platform, and one other passenger, unable to get on the platform, was standing on the step, holding on by the hand railing. The conductor was inside of the car, and gave a signal to start, and the car did start quickly, just as the plaintiff took hold of the hand rail and placed one foot on the step. In reaching to seize the hand rail on the forward side of the step, his hand struck the other passenger standing on the step, and he was disconcerted by missing his hold. As the car came upon the curve, its velocity was too great for the plaintiff's strength, he having failed to obtain a secure footing, and the injury resulted as above stated.

It was the duty of the conductor, before giving the signal to the gripman, to look around, and to have seen that all passengers to take passage at that place were safely on board; and failure in the performance of this duty cannot be excused by the fact that the conductor did not actually see the plaintiff. The negligence of the conductor in this regard is clearly established by all the evidence in the case, including his own testimony. The plaintiff was diligent in attempting to get on the car while it was stationary. He may have been lacking in dexterity, but that is not such a fault as to preclude him from recovering damages.

The evidence shows that the plaintiff has expended for surgical treatment and medicines $120, and has suffered loss of wages by being incapacitated for a considerable time from pursuing his avocation as a laborer, besides suffering physical and mental pain. For these expenditures and loss he is entitled to recover reasonable compensation. He claims, in addition, prospective damages, as compensation for future loss by reason of diminished capacity to earn money. To entitle the plaintiff to recover prospective damages, it is necessary for him to prove with reasonable certainty that his injury is permanent. In this case there is a lack of such proof. The plaintiff himself has testified that since his injury he has not been able, by reason of the weakness of his limb, to perform a day's work, and he believes that he will not become sufficiently strong to perform hard labor. He has been discouraged by reason of his injury, and it is but natural for him to entertain such belief, although it appears from other evidence in the case to be erroneous. The most im-

portant and satisfactory evidence on this point is that given by Dr. R. W. Schoenle, the surgeon who treated the fracture and had charge of the case, which is as follows:

"Q. There was nothing unusual about this case, for that kind of a fracture? A. No; except, perhaps, there was a small piece of bone which had splintered off, about the size of my finger, ready to burst through the muscles and tendons, just underneath the skin,—ready to go through. That is the only unusual part of the case. Q. That is not unusual, either,—a splintered fracture? A. No; excepting that, if this fracture was moved at all, it would have been compound, which would have made it far more serious than it was. Q. If it had been moved. But, as it was not, it was a simple fracture? A. Yes; it was a simple fracture. Q. And the result of the treatment of yourself and Dr. Eames was that you obtained a complete reunion of the limb? A. Yes, sir. Q. Of the bone, I mean. And the operation and its results are among the best that you have obtained in those cases, are they not? A. Considering his age, and having a great deal of laceration of the soft parts, we consider the result very good. Q. The cartilaginous growth which you speak of is only a part of the substance that nature throws in to cause the juncture of the bone, and to heal and restore the parts? A. Yes, sir. Q. The additional growth will finally be fully absorbed, so that the bony matter will be like it was originally, practically, in all respects? A. Well. there will always remain a small lump there. Q. A very little enlargement, so that it will be perceptible, but only so? A. Yes, sir. Q. There is no pain there? A. No; not that I could tell. Q. And the smaller size of that leg is due to the fact that it is not used, and has not been used, as much as the other? A. I suppose so. Q. The exercise of the limb will bring back its normal size, will it not? A. Well, probably so."

It is my opinion that the sum of $1,000 will be a reasonable compensation for the injury as proved. Let there be findings and judgment accordingly.