ENSLEY *v.* DETROIT UNITED RAILWAY.

1. ELECTRIC RAILWAYS — CONTRIBUTORY NEGLIGENCE — KILLING STOCK.

   The owner of a cow which was killed by an electric car while being driven along the highway was not guilty of contributory negligence, where it appears that he kept constantly looking-up the track, and did not see the car until it was too late to prevent the accident. .

2. SAME—EVIDENCE—RES GESTÆ.

   In an action against an electric railway for killing a cow, the statement of the motorman at the time of the accident, and before he left the car, that the car "is running without a headlight," is admissible as part of the *res gestæ. Dompier* v. *Lewis,* 131 Mich. 144, distinguished.

3. SAME—NEGLIGENCE—HEADLIGHTS.

   Under a franchise requiring an electric railway, operating its line in the highway, to keep its cars "properly lighted in the night-time, whether standing or running" (and also without regard to the franchise), the company should furnish such a light as will give a person traveling in the highway reasonable notice of the approach of a car.

Error to Oakland; Smith, J.    Submitted April 23, 1903.    (Docket No. 42.)    Decided July 14, 1903.

Case by Philo Ensley and Ransom Cole against the Detroit United Railway for the negligent killing of certain stock.    From a judgment for plaintiffs, defendant brings error.    Affirmed.

*Brennan, Donnelly & Van De Mark* and *Frank E. Jenkins*, for appellant.

*Kinsman & Arnold*, for appellees.

MONTGOMERY, J. The plaintiffs were joint owners of a cow which was of the value of $45, and which has furnished the subject-matter of this litigation. There is no question that the cow was killed by coming in collision with a motor car on the line of defendant's road. As the contention is made that there was no case for the jury, we quote at some length from the testimony of plaintiff Cole:

" Last summer, August 22d, I resided on Philo Ensley's farm, about one-half mile south of the village of Oxford. I resided upon his farm as a tenant. I had one-half interest in the stock and crops on the farm. I kept 12 head of cows. I can recollect this 22d day of August last. I got the cattle up for the purpose of milking them at 3 o'clock in the afternoon, because I had to furnish milk for the milkmen. The weather was cloudy and threatened to rain, and, after milking the cows, I fed them their corn in the stable on account of rain. About 8 o'clock in the evening I turned the cows out. The barn is situated on the east side of the highway, and the electric railway is situated in the center of the highway, and the house is on the west side of the highway. The pasture in which I turned the cows is on the east side of the highway. That evening about 8 o'clock I had gone across to the house to feed the hogs, and, after I got the hogs fed, I thought I would turn the cows out; and I came across and looked up and down, and I saw no car coming from any direction, and I went and opened the gate that goes to the lane, so that, when I got there, they would go right in, providing I had to crowd them in. I let them out, and kept constantly looking up the track for a car, and I saw no car coming then from either direction. Heretofore it has been the custom of the company to carry a headlight. I never noticed the car come down at night without a headlight, either way. I could see north towards the village clear about eight-tenths of a mile. I saw no signs of any car. I saw no signs of any light or any car at all.

" Q. After looking carefully, you looked down the road at the same time ?

"*A.* Yes, sir.

"*Q.* Now, after looking both ways, what did you do?

"*A.* I turned the cows out.

"*Q.* What did you do with them?

"*A.* I turned them out, and drove them right into the pasture,—that is, into the lane,—and just before I got to the lane gate (the cows were then, well, perhaps 20 feet of the lane gate) I looked around to see if any car was coming, and there was one right onto me, within three or four rods; and I rushed right across the track (I was on the west side of the track when I saw the car coming, and I rushed right across the track), and there was one of the cows started on a run down the track, and I got in around those, rushed them through the gate, and shut the gate. As soon as I got them in, the car was by me. The car was within three or four rods of me when I saw it first. I drove the cows in and shut the gate. I could hardly keep the cows from the gate while I shut it. It would have been impossible for me to have got around that cow. This car that came down had no headlight that evening. It had no light in front of it at all. It was quite dark, rather dark and cloudy, and it was about 8 o'clock. It was about 325 feet south of there that the cow was hit. That is the distance where they rolled the cow off the track."

It is insisted that this testimony shows plaintiff to have been guilty of contributory negligence. In support of this contention it is said:

"Neither on direct nor cross examination did Mr. Cole testify that he at any time looked for the car after leaving the barnyard gate until the cows were within 20 feet of the lane gate, and part of them way over on the west side of the track."

Counsel must have overlooked the following, appearing in the direct examination of the witness:

"I let them out, and kept constantly looking up the track for a car, and I saw no car coming then from either direction."

As he was driving the cattle *down* the track, where he had a plain view, it would seem that, if he constantly kept looking *up* the track (from which direction the car in question came), he did about all that could be expected.

Objection is made to the admission of the testimony of a passenger as to a statement made by the motorman at the time of the collision. He testified under objection that, when the car struck the cow, witness, the conductor, and the motorman got out of the car, and that while the motorman was getting out of the car, before he got out, he said, " There, that is running without a headlight." This was admitted as a part of the *res gestæ*, and we think properly. An effort is made to liken the case to *Dompier* v. *Lewis*, 131 Mich. 144 (91 N. W. 152), but the case is clearly distinguishable. In this case the exclamation was made at the very time of the injury, and related to the very fact; in the former case it was in the nature of a narrative of a past event, and did not relate to the very fact of the injury. The *question* put to the witness in the present case was somewhat broader than the answer itself, and in this holding we confine our decision to the case as disclosed by the answer of the witness.

The principal complaint in the case relates to the charge of the court on the subject of lights. The defendant's franchise contract contained the following:

"That the cars of said railway shall be of modern type, propelled by electricity or any other motive power, except steam, which is or may become suitable for railway purposes, and must be properly lighted in the night-time, whether standing or running."

The circuit judge charged the jury upon this subject as follows:

"The franchise for the township of Oxford, where the accident occurred, contains the provision that cars must be properly lighted in the night-time, whether standing or running. Now, what do the words 'properly lighted' mean? They do not mean necessarily that the car be equipped with a headlight, or, if with a headlight, that it should be an electric headlight rather than one provided or furnished by the use of oil. The question of whether it was light or dark must be carefully considered in determining whether the car was properly and sufficiently lighted or not. If, in fact, it was light enough so that

the plaintiff Cole, in exercising due diligence to protect his own interests, could have seen the approach of the car a considerable distance, then the question of lighting the car would be of no importance. Any light or no light would be sufficient in that event.

"Now, regardless of the franchise, and under the general liability of the defendant's company for negligence, it would be liable for any failure to use reasonable care in the lighting of its car in front, so as to give a fair and reasonable notice to persons desiring to use the highway next to the track. That would not necessarily mean that it should use a headlight, any more than the language used in the franchise; but it would mean that, if the darkness was such that the plaintiff Cole could not otherwise see its approach, then the car should be so lighted as to give the plaintiff fair and reasonable notice of its approach if he looked.

"Now, gentlemen, I leave that whole question to you, and say to you that, under the peculiar wording of that franchise, the liability for violation of the franchise does not differ greatly from what the ordinary liability of the defendant would be under the law of negligence. My construction of that language would be that there should be such a light in front as would give the plaintiff reasonable and fair notice of its approach had he looked. Now, gentlemen, it is for you to say whether the lights that evening, as described, are reasonably or properly within that definition or not. It is the claim of the plaintiffs that, in order to constitute a reasonable and fair notice, or to comply with the franchise, it is necessary to have a headlight.

"Now, gentlemen, if it be true that the light from the window that has been described—from the bull's-eye light and from the windows—would give the plaintiff Cole fair and reasonable notice of its approach, then I say to you that it would not be negligence not to have a headlight; but if, under all the circumstances, you determine that those lights were not and did not give the plaintiff Cole, or would not give him, fair and reasonable notice of its approach, then you might find that the headlight was necessary to comply with the ordinances, to relieve them from liability for negligence. That would depend, gentlemen, on what you determine from the evidence. What I mean to say is, gentlemen, that the failure to carry a headlight is not of itself, standing alone, full proof of

negligence. It might be negligence, and it might not, depending on what other lights were in front of the car."

We think this instruction fairly presented the question to the jury. See *Rascher* v. *Railway Co.*, 90 Mich. 413 (51 N. W. 463, 30 Am. St. Rep. 447); *McGee* v. *Railway Co.*, 102 Mich. 107 (60 N. W. 293, 26 L. R. A. 300, 47 Am. St. Rep. 507).

The record presents no other questions meriting discussion.

The judgment is affirmed.

The other Justices concurred.