REESE v. DETROIT UNITED RAILWAY.

1. CARRIERS — STREET RAILWAYS — NEGLIGENCE — STARTING AND STOPPING CARS.

That while plaintiff was proceeding from her seat in defendant's car to the door, the conductor signaled for the car to start and the jerk threw and injured plaintiff, presents a question of fact for the jury in an action for negligent injuries.

2. EVIDENCE—MASTER AND SERVANT—HEARSAY—ADMISSIONS.

No error is committed in such action by the admission of testimony as a part of the res gestœ that the conductor stated he thought the plaintiff was off the car, where the conductor testified on direct and cross-examination as a witness for the defendant to the same fact.

3. TRIAL—ARGUMENT OF COUNSEL.

Incorrect statements of the law made by the plaintiff's attorney in argument were cured by the prompt action of the trial judge.

Error to Wayne; Mandell, J. Submitted December 13, 1909. (Docket No. 138.) Decided February 3, 1910.

Case by Henrietta I. Reese against the Detroit United Railway for personal injuries. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

*Corliss, Leete & Joslyn (Benjamin S. Pagel,* of counsel), for appellant.

*Lucking, Emmons & Helfman,* for appellee.

MOORE, J. The plaintiff recovered a judgment for injuries received by her while a passenger on one of the cars of defendant company. The case is brought here by writ of error.

The car on which plaintiff became a passenger had three entrances, one at the rear, one in the middle of the right-hand side, and the third at the front. The seats ran at right angles to the sides of the car so that passengers when seated faced the motorman. The aisle ran along the right-hand side from the rear to the front door. Mrs. Reese and her friends occupied a seat about opposite the middle door, with Mrs. Reese sitting at the end of the seat farthest from the door; her daughter sat at her right side and her friend Mrs. Claxton next to the daughter. Another woman occupied the remaining space of the seat. As the car proceeded down town, numerous passengers were picked up along the route, and by the time the car got to Broadway, the street on which plaintiff is alleged to have been injured, all the seats were occupied, and many people were standing in the aisle. The conductor gave the signal to stop and the car was brought to a standstill at the intersection of two streets. The conductor stood on the rear platform just outside the rear door. Several people alighted from the steps at the rear platform. The conductor looked along the outside of the car to the steps opposite the middle door and seeing no one on the steps or about to step from the aisle of the car, signaled the motorman to go ahead. The car was started immediately, and it is the claim of plaintiff that while she was still going toward the door to alight she was thrown forward and badly hurt,

and that there was negligence on the part of the employés of defendant in starting the car before she had an opportunity to alight.

Appellant's grounds for appeal are stated by counsel as follows:

"(1) That a verdict should have been directed in behalf of the defendant and appellant at the trial of the said cause.

"(2) If defendant's negligence was a question for the jury, error was committed in allowing testimony to be introduced which was incompetent and immaterial.

"(3) That error occurred in the charge of the court.

"(4) That error occurred in the argument of counsel for plaintiff and appellee."

We will take up these claims in the order presented.

1. Did the court err in declining to direct a verdict for defendant? The conductor was a witness. He testified there were 40 to 60 passengers on the car.

"*Q.* Tell what took place.

"*A.* I got the signal, I got the signal to stop, and gave my motorman the bell to stop. I was standing on the back platform, right you may say in the doorway, so the passengers could go either side out of the door or in behind me on the platform. Three or four got off at the rear platform and I looked at the side door to see if any one was getting off there. There was no one and I gave the bell to go ahead, and I don't know whether a gentleman or lady hollered 'Wait a minuite,' and I had not let loose of the bell rope, and I gave him a bell to stop, and he stopped, and then I walked right inside to see what was the trouble in there, and I would not say whether this lady or that lady said to me, 'It is a wonder you would not wait until we get off,' and I said, 'I supposed you were all off,' and she said, 'No,' and I don't know whether I made the remark about getting off or not, but some one said, 'Go ahead, we will go on down town.'

"*Q.* When you referred to getting off, to whom did you refer?

"*A.* I was talking to those two ladies at the time, so it would practically be to them.

"*Q.* Did your car stop when you gave the signal to stop the second time?

"*A.* It did.
"*Q.* How far had it gone between the two stops?
"*A.* I would not imagine it had gone over six feet."

On the cross-examination he testified, in part, as follows:

"*Q.* As I understand you, there is no dispute but what your car stopped at John R. street.
"*A.* It did.
"*Q.* You say some people got off the back platform?
"*A.* They did.
"*Q.* You thought every one was off?
"*A.* Yes, sir.
"*Q.* You looked along the outside of the car?
"*A.* Yes, sir.
"*Q.* You did not look inside?
"*A.* No, sir.
"*Q.* You supposed every one was off and you rang up for the motorman to go ahead?
"*A.* Yes, sir.
"*Q.* And you discovered these people were not off?
"*A.* I discovered by some one hollering, 'Wait a minute.'
"*Q.* You looked inside the car?
"*A.* Yes, sir.
"*Q.* You could see them there?
"*A.* Yes, sir.
"*Q.* See this lady standing up by the door?
"*A.* Yes, sir.
"*Q.* You say the plaintiff was thrown back in the seat?
"*A.* I don't know whether she was thrown back.
"*Q.* She was back there when you got there?
"*A.* When I got there she was there.
"*Q.* There is no doubt about any of these facts in any way?
"*A.* No, not exactly."

There was other testimony to the effect that when the car was stopped plaintiff at once arose and started toward the door; that while she was standing and awaiting her turn to step down upon the steps the car was suddenly started and she was thrown forward and hurt. This state of facts presented a case for the jury. See *Finn* v. *Railway Co.*, 86 Mich. 74 (48 N. W. 696); *Kirchner* v. *Railway*, 91 Mich. 400 (51 N. W. 1059); *Selby* v. *Railway*,

141 Mich. 112 (104 N. W. 376); *Burke* v. *Electric Co.*, 147 Mich. 172 (110 N. W. 524); *Hazen* v. *Electric Co.*, 152 Mich. 457 (116 N. W. 364); *Beattie* v. *Railway*, 158 Mich. 243 (122 N. W. 557).

2. Did the court err in the admission of testimony? This assignment is based upon the admission of testimony that the conductor stated he "thought they were off." It is said these were declarations concerning past events by an agent who has no authority to speak for his principal. There are two answers to the objection, *first*, the conductor, a witness for the defendant, testified both on his direct and on his cross examination to the same thing, and *second*, because the statement was made during the happening of the event and was part of the *res gestæ*. *Ensley* v. *Railway*, 134 Mich. 195 (96 N. W. 34); *Plefka* v. *Railway*, 155 Mich. 53 (118 N. W. 731).

3. Did the court err in its charge? The court gave all of defendant's requests to charge except:

"(4) The only evidence before you as to the action of the conductor is his own testimony, and if you believe his statement, plaintiff is not entitled to recover.

"(5) In weighing the testimony of the conductor, you should consider it without any prejudice one way or the other."

The fourth request was not according to the fact. As to the fifth request the jury were charged as follows:

"You sit here as judges of the facts, and as judges of the facts you must not put yourself in the place of either the plaintiff or the defendant, because, if you do, you bring into play a kind of sympathy either for the plaintiff or the defendant. You are to sit here in the solemn capacity of judges, absoluely free from any bias or prejudice or sympathy or any like human emotion, sit here calmly and judicially and determine first what the facts are and then determine from those facts the things I have instructed you you must determine, what things can properly and reasonably be inferred from the facts that have been adduced here from the witness stand. Your endeavor in the jury room should be to arrive at a just, and

honest, and fair verdict under the evidence in this case, and you should be actuated by no other motive."

There was no reversible error in the charge.

4. Argument of Counsel. It is said counsel erred in stating to the jury what the law is, and what the court will charge. As far as any error was committed in this respect, the mischief, if any, was immediately cured by the trial judge. It is said counsel erred in his argument to the jury as to the amount of damages it should give plaintiff. It was the claim of plaintiff that the results of the injury were very grave, making her a cripple for life. There was testimony in support of her claim. We think in this part of the argument nothing was said by counsel which calls for a reversal of the case.

Judgment is affirmed.

MONTGOMERY, C. J., and OSTRANDER, HOOKER, and McALVAY, JJ., concurred.