MAURICE GILBERT *vs.* WEST END STREET RAILWAY COMPANY.

Suffolk.   November 24, 1893. — January 6, 1894.

Present: FIELD, C. J., ALLEN, MORTON, & BARKER, JJ.

*Personal Injuries — Photograph as Evidence of Physical Condition.*

While photographs have been admitted for the purpose of identifying persons, or of showing the condition of places and the relative position of objects, if verified by proof that they are true representations, it is doubtful whether they ought to be admitted for the purpose of showing the health, strength, or agility of a person; and a photograph, offered in an accident case, if regarded as evidence of the plaintiff's physical condition when taken the summer before the accident, would be evidence of his condition at a time so remote that the court would be justified in rejecting it, even though accompanied by evidence that the physical appearance of the plaintiff had not changed in the mean time, especially where there is no difficulty in producing direct evidence of the apparent physical condition of the plaintiff at the time of the accident from persons who saw and knew him.

Although common carriers of passengers are required to use a high degree of care towards the passengers carried, they never have been held responsible for all accidents which by any possible means they could have prevented.

In an action for personal injuries, the judge instructed the jury that, if a street car had stopped a reasonable time, and the plaintiff did not step from it until after it had started, and was not at the time of starting apparently in the act of leaving, and the conductor did not know or have notice or reason to know that the plaintiff was intending to get off, there was no negligence in starting the car; that if the jury should find that the car had waited a reasonable time, and that the plaintiff was not in the act of leaving when the bell was sounded to

start, and the conductor had no notice of the plaintiff's intention to get off, there was no negligence in starting the car; and that the conductor was not bound to know that every passenger intending to leave had left in the absence of any sign of such intention, and if after waiting a reasonable time he took reasonable means to see whether passengers were leaving, and no one appeared to be leaving, and the conductor did not know or have reason to know that the plaintiff was intending to get off, there was no negligence in starting the car. *Held,* that the instructions were correct.

TORT, for personal injuries occasioned to the plaintiff while a passenger in a car of the defendant corporation. At the trial in the Superior Court, before *Richardson,* J., the jury returned a verdict for the defendant; and the plaintiff alleged exceptions. The facts appear in the opinion.

*E. P. Carver & E. E. Blodgett,* for the plaintiff.

*W. B. Sprout,* for the defendant.

FIELD, C. J. The plaintiff fell from the running-board of an open electric car, and was injured. The principal question of fact in the case was whether the plaintiff stepped from the running-board to the ground after the car had started, or the conductor caused the car to start while the plaintiff was in the act of stepping off. Some other questions connected with this were whether the conductor caused the car to stop a reasonable length of time for passengers to alight; whether, at the time he caused the car to start after having it stopped, he had any notice or knowledge that the plaintiff intended to step from the car; and whether, if he had no notice or knowledge of this, he took reasonable means to see whether the plaintiff was leaving or about to leave the car.

The plaintiff, "owing to his physical condition, could not testify in court, but his deposition was taken and read at the trial." There was evidence "that the plaintiff had the appearance of a man seventy-five years of age, and was very clumsy in his appearance, and somewhat infirm." The plaintiff's testimony was "that he was in good health, vigorous for his age of sixty-two years, and had not been ill for twenty years before the accident, and was in the habit of taking long walks with his sons." The exceptions then recite as follows: "The plaintiff not being present in court, a photograph of the plaintiff, taken the summer previous to the accident, was offered in his behalf, together with proof that said photograph was a good likeness of him at the

time of the accident," and it was excluded by the court. The photograph, it seems, was offered for the purpose of showing that the plaintiff in appearance was not seventy-five years old, or very clumsy, or somewhat infirm. We may assume that the question whether he appeared to be old, clumsy, and infirm had some relevancy to the issues to be tried, particularly to the degree of care which the conductor might be called upon to exercise towards him. While photographs have been admitted for the purpose of identifying persons, or of showing the condition of places and the relative position of objects, if verified by proof that they are true representations, we doubt very much whether they ought to be admitted for the purpose of showing the health, strength, or agility of a person. It is common knowledge that photographs may be taken, and often are taken, in such a way as to make the person taken appear younger and less infirm than he is or than he looks. The accident happened on June 26, 1891; the photograph was taken the summer before; and the photograph, if regarded as evidence of his physical condition when it was taken, would be evidence of his condition at a time so remote that for this reason the court in its discretion could have rejected it, although it was accompanied by evidence that the physical appearance of the plaintiff had not changed in the mean time. Courts are not required to try cases by such comparisons, when there is no lack of evidence directly pertinent. The exceptions do not state that the presiding justice was satisfied by the proof offered that the photograph was a good likeness of the plaintiff at the time of the accident. But if we assume that there was sufficient evidence of this, and that the presiding justice did not reject the photograph on this ground, we still are of opinion that the court did not err in rejecting the photograph. There was no difficulty in producing direct evidence of the apparent physical condition of the plaintiff at the time of the accident from persons who saw and knew him; and, without determining that a photograph can never be received as evidence of the health and strength of a person, we think that at least it was in the discretion of the court to reject it. *Farrell* v. *Weitz, ante,* 288.

Of the rulings requested by the plaintiff, the first, viz. " that, if it was possible for the defendant to prevent this accident, then the defendant was negligent," plainly ought not to have been given.

Although common carriers of passengers are required to use a high degree of care towards the passengers carried, such carriers never have been held responsible for all accidents which by any possible means they could have prevented. *Dodge* v. *Boston & Bangor Steamship Co.* 148 Mass. 207, 218.

The exception to the refusal to give the second ruling was waived at the argument.

The instructions given to the jury by the presiding justice, to which exceptions were taken, seem to us correct.* *Nichols* v. *Middlesex Railroad*, 106 Mass. 463.

*Exceptions overruled.*

---

* The defendant asked for certain rulings of law, to which the plaintiff objected, but in respect to which the court instructed the jury as follows:

" 1. A common carrier is bound to delay at a station or stopping place only a reasonable length of time for the purpose of allowing passengers to alight, unless those in charge know or have reason to know that some passenger has not got off, and is desiring to do so.

" 2. Passengers on a street car, when at their place of destination, should leave the car with reasonable despatch, and after the car has stopped a reasonable time for passengers to get off, and as soon as all passengers destined for a particular place, or intending to get off there, have apparently left, and the conductor has no notice that any one else is trying to get off, then the conductor may properly start his car.

" 3. If the car has stopped a reasonable time, and the plaintiff did not step from the car until after the car had started, and was not at the time of starting the car apparently in the act of leaving it, and the conductor did not know, or have any notice, or have reason to know that the plaintiff was intending or desiring to get off there, then there was no negligence on his part in starting the car.

" 4. If the jury find that the car had waited a reasonable length of time for passengers to alight, and that the plaintiff delayed and was not apparently in the act of leaving the car when the bell was given for the car to start, and the conductor had no notice or knowledge of the plaintiff's intention or desire to get off, then there was no negligence in starting the car.

" 5. The conductor was not bound to know that every passenger had left the car that was intending to leave it at that place, in the absence of any sign of such intention, and if, after waiting a reasonable time, he took reasonable means to see whether passengers were at the time leaving the car, and no one appeared to be leaving it, and the conductor did not know, or have any reason to know, that the plaintiff was intending to get off, there was no negligence in starting the car."