MEMPHIS STREET RAILWAY COMPANY *v.* MRS. KATE
SHAW.

(*Jackson.* April Term, 1903.)

1. **STREET RAILROADS.** Evidence of what was said and done
is competent where passenger is carried beyond destination,
when.

Where, in an action against a street railway company for per-
sonal injuries, the plaintiff's contention is that she was negli-
gently carried beyond her destination on the trip out from the
city to her home, and the conductor would not return with her
to her destination. but carried her on to the terminus of the
road and brought her back, and again carried her beyond her
destination on her return; that the conductor treated her rudely
on the trip out and back, and negligently and wantonly in the
return trip carried her beyond her stopping place, and that she
was injured in attempting to get off at a place beyond her des-
tination where the car stopped on the return trip, the evidence
of what was said and done by the conductor and plaintiff was
not only competent, but constituted the very gist of the action.
·(*Post, pp.* 471-472.)

2. **SUPREME COURT PRACTICE.** Case viewed from plain-
tiff's standpoint and theory, when.

A case in the supreme court where a judgment has been rendered
in favor of the plaintiff in the court below on the verdict of the
jury must be viewed from the plaintiff's standpoint, and on his
theory, as the jury evidently gave the weight of their verdict in
his favor on his theory and standpoint. (*Post, pp.* 471-472.)

3. **CHARGE OF COURT.** Negligence solely contributing to injury means sole cause of injury, when.

Where, in an action against a street railway company for personal injuries, the court charges the jury that if plaintiff's negligent act solely contributes to bringing about the injury for which he complains, he can not recover, the trial judge meant if the negligence of the plaintiff produced or was the sole cause of the injury, he can not recover, because to give the word "contribute" its legal signification would make the charge unintelligible as one can not contribute solely to effect a given result, but only in connection with some other act. Assuming that it was intended to charge the doctrine of concurrent negligence, it is not reversible error because there was no request for any other additional charge. (*Post, pp.* 472-474.)

4. **SAME.** Want or meagerness of charge on contributory negligence is not reversible error where there is no request for additional charge, when.

Where, in an action for personal injury the defendant insisted throughout the trial that there was, and could be no contributory negligence or concurrent negligence under the proof, but that the facts presented a case of sole negligence on the part of plaintiff, or sole negligence on part of defendant, depending on whether the jury adopted the plaintiff's or defendant's theory of the facts, the want of a charge on contributory negligence or the meagerness of a charge thereon, is not reversible error where there was no request for additional instructions. (*Post, pp.* 473-474.)

Case cited, distinguished and approved: Nashville Street Railway Company v. Norman, 108 Tenn., 331.

5. **STREET RAILROADS.** Conductor must not start car while passenger is alighting.

It is the duty of a conductor of a street car to see and know that no one is in the act of alighting when he starts his car at a

Street Railway Co. v. Shaw.

regular stopping place for the discharge and reception of passengers. (*Post, pp.* 474-477.)

Cases cited and approved: Railroad Company v. Mitchell, 98 Tenn., 31; Highland Company v. Burt, 92 Ala., 29; Gilbert v. Street Railway Company, 160 Mass., 403; Losee v. Street Railway Company, 63 Hun, 405; 18 N. Y. Supp., 297.

6. **SAME.** Assistance must be rendered aged and infirm passengers in alighting from car.

It is the duty of those in charge of a street car to give greater care and consideration to aged and infirm persons, whose age or infirmity is apparent from their appearance, than to other persons, and if necessary to assist them in getting off the car, and for failure to perform such duty, the employer is liable. (*Post, pp.* 474-477.)

Case cited and approved: Railroad Company v. Mitchell, 98 Tenn., 31.

7. **CHARGE OF COURT.** Correctly stating theory of both parties is not reversible error.

Where the judge in his charge to the jury states the plaintiff's theory without stating any hypothetical fact, which was not brought out by some of the witnesses, and the plaintiff's theory is correctly set forth as well as that of the defendant, the defendant can not sustain an assignment of error on this ground. (*Post, p.* 477.)

8. **COMMON CARRIER.** Liability for violence and insult to passengers.

A contract to carry passengers is not one of mere toleration and duty to transport the passengers on its cars, but it also includes the obligation on the part of the carrier to guarantee to its passengers respectful and courteous treatment, and to protect them not only from violence and insult from strangers, but also from violence and insult from the carrier's own servants. (*Post, p.* 478.) ·

Street Railway Co. v. Shaw.

Case cited and approved: Traction Company v. Lane, 103 Tenn., 376, 383.

9. **DAMAGES.** Exemplary, punitive or vindictive damages allowable, when.

Punitive damages are allowed when a wrongful act is done with a bad motive or so recklessly as to imply a disregard of social obligations, or when there is negligence so gross as to amount to misconduct and recklessness. What amounts to gross negligence under the facts of the case, or to a disregard of the safety of the person injured, is a discretionary ground for exemplary damages. There need not be positive proof of malice or oppression, if the transactions or facts shown in connection therewith, fairly imply its existence and it is left to the jury to look at all the circumstances in order to see whether there was anything in the conduct of the defendant to aggravate the damages. (*Post, pp.* 477-481.)

Cases cited and approved: Telegraph Company v. Shaw, 102 Tenn., 318; Traction Company v. Lane, 103 Tenn., 376; American Lead Pencil Company v. Davis, 108 Tenn., 254.

10. **SAME.** Same. Case in judgment.

Where a conductor carried a passenger beyond her destination, though he was requested in ample time to stop there, but neglected to do so, presumably because engrossed in conversation with his companions, and carried her to the end of the line, became angry and quarreled with her, on the return, demanding additional fare and threatening to take her back to town, and joined the motorman in laughing at her or in such manner as to indicate it to her and her fellow passenger, and again carried her by her stopping place on the return at a high rate of speed, laughing with the motorman at her discomfiture, and stood and saw her attempt to get off, and started his car before she was safely on the ground, throwing her violently and seriously in-

juring her, are facts sufficient, not only to call for charge upon the feature of punitive damages, but also justify the jury in giving them. (*Post, pp.* 471-472, 479-481.)

---

## FROM SHELBY.

---

Appeal in error from the Circuit Court of Shelby County.—J. P. YOUNG, Judge.

WRIGHT, PETERS & WRIGHT, for Street Railway Company.

CARROLL, MCKELLAR & BULLINGTON, for Mrs. Shaw.

---

MR. JUSTICE WILKES delivered the opinion of the Court.

This is an action for damages for personal injuries. It was tried before a jury in the court below, and there was a verdict for $5,000. On motion for a new trial, $2,000 of this amount was remitted, and judgment was rendered for $3,000 and costs, and the street car company has appealed and assigned errors.

The substance of the complaint is that plaintiff was negligently carried beyond her destination on her trip out from the city to her home, and was afterwards carried on to the terminus of the road, and brought back,

and again wantonly carried beyond her destination on her return.

It is said the court erred in admitting, over the objection of the company, evidence of what was said and done by the conductor and plaintiff on the trip out and the return.

Plaintiff's contention is that she was carried negligently beyond her destination in going out, and that the conductor would not return with her to her destination; that he treated her rudely on the trip out and back, and negligently and wantonly on the return trip carried her beyond her stopping place. The case in this court must be viewed from the plaintiff's standpoint, and on her theory, and what was said and done on the trip out and back is not only competent, but constitutes the very gist of the action.

It is said the court erred in the following istruction to the jury: "The court further instructs you that a person who enters a street car to be transported to a certain place, and pays his fare, is a passenger, and that there is a corresponding obligation on the part of the passenger to act with prudence, and to use the means provided for his safe transportation with the same reasonable circumspection and care that is required on the part of the carrier, for the law does not prescribe a different rule or measure of care with respect of parties, and, if his negligent act solely contributes to bringing about the injury of which he complains, he cannot recover."

The criticism is in the use of the word "solely," and the contention is that the court should have told the jury that, if both plaintiff and the company were negligent, the plaintiff could not recover. To give to the word "contribute" its legal signification would make the charge unintelligible, as one act cannot "contribute" solely to effect a given result, but only in connection with some other act; and there can be no sole contributory cause of an accident.

We may assume, therefore, that the trial judge meant, if the negligent act of the plaintiff produced or was the sole cause of the injury, she could not recover.

There are two or more answers to this assignment, assuming that it was meant to charge the doctrine of concurrent negligence.

One is that there was no request for any other or additional charge. Another is that the company insisted throughout the trial that there was and could be no contributory negligence or concurrent negligence, under the proof, but that the facts presented a case of sole negligence on the part of plaintiff, or sole negligence on the part of defendant, according to whether the jury adopted plaintiff's or defendant's theory of the facts. Counsel for the road stated that, if plaintiff's theory was true, then the road was guilty of negligence, to which, in the language of counsel, "we don't claim her negligence contributed." The jury evidently adopted the theory of plaintiff.

The case of *Nashville Street Railway Co.* v. *Norman,*

108 Tenn., 331, 67 S. W., 479, is cited by counsel for the road, and relied on by him; but in that case there was a theory of concurrent negligence presented by the record, and the court was asked to charge the doctrine of concurrent or contributory negligence.

The court in the present case, in his charge, did present the feature of contributory negligence, saying to the jury: "But if the passenger is injured by his or her own negligence or want of care, and without any negligence or want of care on the part of the carrier, then the carrier is not liable, and there can be no recovery." This was meager, but there was no request for additional charge.

It is said that the court erred in charging as follows: "You are also instructed that it is the duty of those in charge of the car, when signaled to stop at a regular stopping place to discharge passengers or to take on others, to await a sufficient length of time to allow the passengers—whether those giving the signal to stop, or those who are undertaking or attempting to alight—a sufficient length of time to alight in safety, by the exercise of reasonable diligence, and to see and know that no passenger is in the act of alighting when the car is again put in motion. And it is likewise their duty to give greater care and consideration to aged or infirm persons, whose age or infirmity are apparent from their appearance, than to other persons, and, if necessary, to assist them in getting off the car; and, if they fail to

perform their duty in these respects, the employer is liable."

One objection to this is that it requires the conductor absolutely to know and see that no passenger is in the act of alighting when the car is put in motion, and thus makes the company virtually an insurer that the conductor shall see the passenger if alighting.

This doctrine is laid down in Booth on Street Railroads, sec. 349, in these words: "It is the duty of those in charge of the car, when signaled to stop for the purpose of discharging passengers, to ascertain who and how many of the passengers intend to alight at that place, to wait a sufficient length of time to allow them to alight in safety by the exercise of reasonable diligence, and, in any event, to see and know that no passenger is in the act of alighting, or otherwise in a position which would be rendered perilous by the motion of the car when it is again put in motion." Booth on Street Railroads, sec. 349.

Again, in *Highland Co.* v. *Burt,* 92 Ala., 29, 9 South., 410, 13 L. R. A., 95, it is said: "It is the duty of the driver to wait a sufficient length of time to enable passengers to alight in safety by the exercise of reasonable diligence, and, in any event, to see and know that no passenger is in the act of alighting, or otherwise in a position which would be rendered perilous by a movement of the car."

In *Railroad Co.* v. *Mitchell,* 98 Tenn., 31, 40

S. W., 72, no doubt citing from Booth on Street Railroads, it is said: "A common carrier is guilty of negligence if it fails to stop its trains at stations a sufficient length of time to enable passengers, including the aged and very young, by the exercise of due care and diligence to leave the cars in safety and without hurry or confusion, or if, after having waited a reasonable time, it starts its train when it is known, or should by reasonable care have been known, that passengers were in the act of alighting from the cars.

"As applied to a woman aged seventy-six years, and weighing two hundred pounds, the following instruction, taken as a whole, is not erroneous, to-wit: 'It was the duty of the defendant company to use all reasonable care and diligence for her safety while on and getting off of the train, and to give a reasonable time on arriving at the depot (her destination) to alight from the train in safety; and it was the duty of the company, or some agent or employee of defendant in charge of the train, to see that sufficient time was given for that purpose, and, if necessary, to assist her in making her exit.''

In Nellis on Street Surface R. R.'s, page 479, notes, it is said: "The conductor must be alert to see that no one is alighting or attempting to alight before he starts his car." Citing *Gilbert* v. *Street Railway*, 160 Mass., 403, 63 N. E., 60; *Losee* v. *Street Railway*, 63 Hun, 405, 18 N. Y. Supp., 297.

While we think that the language of the trial

Street Railway Co. v. Shaw.

judge, when taken in its connection, and in view of other portions of the charge, does not make the company an insurer, and was not so intended, we cannot, in case of street railways, when a conductor has only one car, or, at most, two or three cars, to watch, consider it too high a degree of care that he should be required to see and know that no one is in the act of alighting when he starts his car. The whole length of the car, and every passenger on it, can be brought under his notice at a glance, and they all alight on one side or at one end; and, by the exercise of any reasonable degree of care and caution, he may see and know. We do not mean to apply the rule to commercial cars, where there are several coaches in a train, under one conductor.

As to the duty of the conductor to look after the safety and care of aged and infirm persons, and, if necessary, assist them in alighting, the instruction given in this case does not go beyond the rule of duty laid down in *Railroad Co.* v. *Mitchell*, 98 Tenn., 31, 40 S. W., 72.

This does not mean that it is the duty of the conductor to assist passengers generally to alight.

The sixth assignment complains of the fact that the trial judge gave plaintiff's theory of the case to the jury. We find that it was immediately followed by a statement of defendant's theory, and both are stated with substantially and virtually exact correctness.

We do not find in the learned judge's statement any fact stated hypothetically which was not brought out by

some of the witnesses, and plaintiff's theory is correctly set forth, as well as that of defendant.

It is said that the trial judge should have given no charge upon the subject of exemplary damages; that the case presented is not one for punitive damages, and hence the verdict and judgment are excessive, and so much so as to evince passion, prejudice, or caprice, caused by the charge upon the subject of exemplary damages.

In considering this assignment, we must, of course, take plaintiff's version of the matter, as the jury evidently credited her, and gave the weight of their verdict in her favor, and there is no assignment that there is no evidence to support the verdict. If the case is one which calls for exemplary damages, then the court should have charged the jury upon that feature.

In *American Lead Pencil Company* v. *Davis,* 108 Tenn., 254, 66 S. W., 1129, this court approves the language of Sutherland on Damages, when he says that punitive damages are allowed when a wrongful act is done with a bad motive, or so recklessly as to imply a disregard of social obligations, or when there is negligence so gross as to amount to misconduct and recklessness. Continuing, the court says: "The authorities affirm that what amounts to gross negligence under the facts of the case, or to a disregard of the safety of the person injured, is a discretionary ground for exemplary damages."

This court has also said, in *The Traction Co.* v.

*Lane,* 103 Tenn., 376, 53 S. W., 557, 46 L. R. A., 549:
"A contract to carry passengers is not one of mere tol-
eration and duty to transport the passengers on its cars,
but it also includes the obligation on the part of the
carrier to guarantee to its passengers respectful and
courteous treatment, and to protect them not only from
violence and insult from strangers, but also from vio-
lence and insult from the carrier's own servants."

In *Telegraph Co.* v. *Shaw,* 102 Tenn., 318, 52 S. W.,
163, it is said: "There need not be positive proof of
malice or oppression, if the transactions, or facts shown
in connection therewith, fairly imply its existence, and
it is left to the jury to look at all the circumstances in
order to see whether there was anything in the conduct
of the defendant to aggravate the damages."

Tested by these rules, we advert to the facts of the
case as given by plaintiff and her witnesses: Plaintiff
was a German lady seventy-three years of age.    She
entered a car in the city to go to her home, in the
suburbs.    She desired to get off at Orleans street, and
so told the conductor at the next crossing before reach-
ing Orleans.

It seems the conductor and another, one    not
on duty, and a young man friend, were on the
rear of the car, talking. . He, being engaged in
conversation, did not give the signal to stop at
Orleans, and plaintiff hallooed at him, but he ran
on to Richland avenue; and plaintiff declined
to get off there, and demanded to be carried back, but

the conductor refused, and notified her that he would take her to the end of the line, which he did.    On the way back, the conductor demanded of her another fare, which she refused.   She says he "fussed" at her, and she demanded to be put off at Orleans street, when the conductor threatened to carry her on to town again. Before reaching Orleans, the conductor and motorman were in conversation, looking back at her and laughing, and, as a young lady passenger stated, evidently making fun of plaintiff.   He did not stop at Orleans, but ran by that crossing very rapidly, and only stopped at the next, which was Lauderdale street, in order to take on three ladies.   Plaintiff, when the three ladies got on, attempted to alight; and while on the step, and in the act of putting her foot to the ground, the car was started suddenly, and threw her violently to the ground, bruising her, breaking one rib, and otherwise injuring her. There is a conflict as to whether the car had stopped when she tried to get off, but her evidence, and we think the decided weight of testimony, is to the effect that it had.    The fact that three other ladies entered the car is strongly persuasive, if not conclusive, that the car did stop.    That it started up before she alighted appears very clearly from the testimony of the policeman, who picked her up about six feet beyond the stopping point where the ladies entered the car, and beyond the regular crossing.   This version, as well as the plaintiff's entire theory of the case, is fully sustained by Miss Taylor in its most important details.

Street Railway Co. v. Shaw.

A summary of the facts bearing upon this feature of punitive damages is that the conductor had only two passengers to look after. He was asked in ample time to stop the car at Orleans street. He neglected to do it, presumably because engrossed by the conversation of his companions. He carried her to the end of the line, and became angry and quarreled with her on the return, demanding additional fare. He threatened to take her back to town, and joined the motorman in laughing at her, or in such manner as to indicate to her and to Miss Taylor, her fellow passenger. He carried her again by her stopping place on the return, at a high rate of speed, laughing with the motorman at her discomfiture. He stood and saw her attempt to get off, and started his car before she was safely on the ground, throwing her violently, and seriously injuring her.

We think these facts are sufficient not only to call for a charge upon the feature of punitive damages, but also to justify the jury in giving them, and, in view of these facts and the injury sustained, there is no error in the amount; and the judgment is affirmed, with costs.