## KEELEY *v.* CITY ELECTRIC RAILWAY CO.

1. Carriers—Boarding and Alighting of Passengers.
   It is the duty of employés in charge of a street car to ascertain who and how many of the passengers intend to alight at a place where the signal has been given to stop, and to wait a sufficient time to allow them to alight in safety, in the exercise of reasonable diligence, and such employés are required to see and know that no passenger is in a perilous position when the car is started.[1]

2. Same.
   After the car has waited a reasonable time for passengers to

---

[1] Duty of street car conductor to see that passenger is off before starting car, see note in 11 L. R. A. (N. S.) 140.

alight, and no passenger is in the act of leaving the car, and the conductor has no notice or knowledge of the intention of a passenger to alight, it is not negligence to give the signal to start.

3. SAME—STREET RAILWAYS—CONDUCTOR.

It is the duty of the conductor, before signaling to proceed, to look about and ascertain that all passengers are safely on board.

4. SAME.

And a passenger, riding on the platform of a crowded car or trailer, might be warranted in stepping to the ground when the car stopped and upon the rear platform of a preceding car in the same train.

5. SAME—CONTRIBUTORY NEGLIGENCE.

Nor was an infant nine years old guilty of contributory negligence, as a matter of law, for leaving the platform on which he was riding and attempting to board the next car at a stopping place, though he did not know why the cars stopped, did not see any one attempting to leave or enter the car, and did not know where the conductor was.

6. SAME—NEGLIGENCE.

It could not be said, as a matter of law, that the conductor need not anticipate that plaintiff would leave his position and try to secure another.

7. SAME.

The carrier is not an insurer of the safety of passengers.

8. SAME—TRIAL—ARGUMENT OF COUNSEL.

Where counsel for plaintiff, in the course of a somewhat inflammatory argument, stated that it was defendant's duty to see that plaintiff, an infant, had a safe position in which to ride, and the court, interrupting, stated that he could not so instruct the jury, but permitted counsel to proceed further with his argument, and in the course of his charge permitted the jury to take into consideration the claims of the respective attorneys without advising the jury to consider only the law as laid down by the court, a verdict which was opposed to the weight of the evidence is reversed and a new trial ordered.

Error to St. Clair; Tappan, J.   Submitted June 27, 1911. (Docket No. 6.)   Resubmitted October 10, 1911.   Decided December 29, 1911.

Case by George A. Keeley against the City Electric Railway Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*P. H. Phillips,* for appellant.

*Fred B. Brown (Cyrus A. Hovey,* of counsel), for appellee.

The plaintiff, then nine years old, fell or was thrown under the wheels of one of defendant's cars and was injured. The time was the afternoon of December 24, 1901. The case for plaintiff, indicated by the declaration and supported by testimony, may be stated as follows: He, unattended, boarded a train of defendant's cars, consisting of a motor car and two trailers, at a railroad station in Port Huron, taking his place—the cars being crowded and the platforms occupied by passengers—on the front platform of the rear car. There was a single track, and passengers could, and did, enter and leave the cars from either side. On the journey towards the business center of the city, at a certain street crossing, the train was stopped. Plaintiff stepped upon the street for the purpose of getting upon the rear platform of the car ahead of that on which he had been riding. While doing so, the train was started, and he, having secured a hold upon the platform railing of the car, was dragged for some distance, lost his hold, and was run over. There was no passageway from one car to another. There was but one conductor.

It is not claimed that the conductor saw the plaintiff or knew or had notice of his intention to change his position. It does not appear that plaintiff did not occupy a safe position on the rear trailer. In his charge to the jury the learned trial judge, after stating, concisely and clearly, the claims of the parties, added:

"These are the salient points of the claims of the respective parties. In addition, the attorneys for both par-
168 Mich.—6.

ties have explained their claims in detail, and you may consider them in connection with this concise statement made by the court."

He further said that, under the declaration, plaintiff must establish at least two facts: First, that the car had come to a standing position when he attempted to board it; second, that it was suddenly started from a standing position as plaintiff was boarding it. He also advised them that if these facts were established by a preponderance of the evidence—

"If plaintiff did board the trailer at the Tunnel depot and rode from there to Minnie street as he claims, and there got off the trailer and immediately took hold of the handholds and put his feet upon the next car, at that moment when it was standing still, he was a passenger and entitled to the same reasonable precaution against accident that any other passenger similarly situated would be entitled to. You will recall that there is no proof that the conductor did in fact see the plaintiff attempt to board the standing car, so the question is: If he was so boarding the car, should the conductor, in the exercise of reasonable care in examining the approaches to his car, for intending passengers, have seen him and have known that the starting of the car, under the conditions that existed, would be likely to cause his injuries?"

The jury was also instructed:

"Now, as to the duty of the company to passengers attempting to board the car: You are instructed that where any street car has stopped at a street crossing to allow one or more passengers to alight, in a populated community, it is the duty of those in charge of the car to be alert to ascertain whether there are also intending passengers attempting to board the same car or cars. If a car has either stopped to let off a passenger, or for any other reason, an intending passenger at a street crossing would have a right to take advantage of that fact and board the car.

"In exactly the same manner, if you find from the proofs that the plaintiff was riding upon the front steps of the rear trailer, and the platform and steps were crowded with passengers, as he states, then he would have a right to step down upon the ground and step to and upon the

steps of the platform of the next car while that car was standing still upon the track.

"You are further instructed that when he left the steps of the car, if he did so, and stepped down upon the ground to board the next car while it was standing still upon the track, then while he was upon the street he occupied the same position and was entitled to the same degree of caution on the part of the employés of the company as any other person who might have been attempting to board the car while it was standing still, and no further or different degree of care was due to him than to any other passenger attempting to board the same car under like circumstances.

"The reason for applying this rule is plain. As I have heretofore said, it is plaintiff's claim that he was upon the ground in a safe position just before he attempted to get on the car. There is nothing to show that he was not able to step up from the street upon the step and platform of the standing car as any older person in the same position. There is no proof at all of his inability to do this, and you have no right to assume such inability on his part to do this. Therefore the same degree of care and watchfulness for boarding passengers applies in this case as it applies in the case of all passengers under like circumstances.  *  *  *

"If you find from the proofs that the boy was in fact boarding a standing car and in a dangerous position, and also find that the conductor failed to exercise reasonable care and prudence to discover the presence of boarding passengers at the time the car was started up and plaintiff injured, then your verdict should be for the plaintiff. If, on the other hand, the boy was in the act of boarding a standing car, as he claims, and you find from the proofs that because of the short space of time he remained at the point of boarding the car, or for any other reason, a reasonable, careful, and prudent inspection of the approach to the car would not have led to the discovery of his position in boarding it, then there was no breach of duty, no negligence on the part of the employés of the defendant company, and there can be no recovery by plaintiff. The reason for this must be plain to you, for, as I have explained, recovery must be based upon the breach of duty to make reasonable inspection for boarding passengers, and if for any reason that reasonable inspection, as I have explained it, would have failed to discover the impending danger,

if there were any, then there has been no breach of duty, and consequently no liability on the part of the defendant company."

For defendant the court was requested to instruct the jury that:

"If the claim of the plaintiff in this case be true, he was in a position of safety on the car from the time the car started from the Tunnel Depot, up to the point where the accident occurred. The plaintiff admits that at the time of his alleged attempt to move from the position in which he originally was, to the platform of the other car, that he was not aware of the cause for the stopping of the car, and that he saw no one attempting to board or depart from the car. He further admits that he did not see the conductor at this time, and did not know where he was. Under these circumstances, it was his duty to know that the cars might start at any time, and in his attempting to leave the place where he claims he was and take a position on the other car, knowing this fact, and knowing that the conductor was not where he could see him, he was guilty of contributory negligence which would prevent his recovery in this case.

"The plaintiff claims in this case that he secured a position on the front end of the rear trailer, and that he occupied his position with safety and without danger from the point where the car started up to the point where the accident occurred. He admits that at the time the car stopped, as he claims, near Minnie street, he saw no person attempting to either board or alight from the cars, and that he did not see the conductor. If, under these circumstances, he attempted to change his position from one car to another, as he states the fact, the defendant cannot be charged with negligence on account thereof.

"While it was the duty of the conductor on this car not to start the car if any passengers were attempting to board one of the cars while it was stationary, until such passengers had gotten upon the car safely, it was not the duty of the conductor to anticipate that passengers securely upon the car would attempt to change their position, and his failure to observe the passengers attempting to so change their position from one car to another, without any indication to him that it was their intention to do so, would not constitute negligence.

"There is no testimony in this case tending to show,

and no claim is made on the part of the plaintiff, that, at the point where the plaintiff claims the car stopped, there were any passengers waiting for the car or intending to board the car. Under these circumstances, no duty devolved upon the conductor that required any care in the starting of his car, so far as intending passengers were concerned. I therefore charge you that the act of the plaintiff in suddenly leaving his position on the car and attempting to board the car ahead was an action assumed at his own risk, and, even if there was a passenger alighting from the car, the conductor was justified in starting the car as soon as the passenger alighted, and if, during this time, the plaintiff attempted to change his position, the conductor would not be chargeable with notice, and there could be no recovery on the part of the plaintiff in this case."

These were refused. The testimony for defendant tended to prove that plaintiff was not a passenger upon this train; that the train did not stop at or near the point where plaintiff claimed he was injured; that plaintiff attempted to board the car while it was in motion.

One of the attorneys for the plaintiff in his argument to the jury employed the following language:

"Now I am going so ask your attention to some general considerations in this case. Have you got any right, Captain Danger, or any of you gentlemen, to go out and tear up the streets of the city of Port Huron, and put a street railway track down there and run cars and charge people 5 cents for riding upon it; when a farmer comes in town and a car comes along he has got to turn out of the way—or when a pedestrian comes along you have got to get out of the way of the car. You have no such right here because you have not any franchise. Who gives the franchise? The public. And what is that franchise? It is a privilege, is it not? A privilege to do what? A privilege to use the streets that belong to the people, to carry the people for pay, is it not? Is it a free gift carrying no responsibility, or does it carry a duty? It carries a duty, and that is to carry the blind, the old, the halt, the lame, the young, does it not? To carry them indiscriminately, does it not? * * * What are the street cars for? Are they for the people that can swing along in their automobiles or in their landaulets? Why, no, gentlemen, the street cars are the people's conveyances, are they not? And the poorer

a man is the more he needs a street car. Now, this boy on that day had just as much right to ride upon that street car as though his name was John D. Rockefeller or Pierpont Morgan, just the same, and it was just the same duty of this company to carry him, and more than that, being a little boy nine years old. Some of you have got little children, possibly. You know what the responsibility of a little nine-year old boy is. Now he cannot take care of himself. It was their duty to look after him, was it not? Now, I say this young George was nine years old. Why we commonly say, if we want to put a man down in the scale, ' He doesn't know as much as a ten-year old boy,' and this was not a ten-year old boy, but nine years old. What is it that gives a man knowledge of the danger of street cars? It is observation first, is it not, and it is experience. Those are two things. Now, what is the peculiar characteristic of a nine-year old boy or a ten-year old boy? From eight to fourteen what is the peculiar characteristic? Why it is that you cannot keep him still a minute with a padlock. The only way you can get that boy still so he will stay so any length of time is to chloroform him and put him to sleep, and then he is liable to waken. The street car company were bound to know the nature of this boy. They were bound to look after him, because that is the duty of the street car company. What was the fair reasonable rule that governed this boy or that should govern him; that is, governing his responsibility? It was not the same as an adult. Of course, that is self-evident. The rule that should govern this boy, as we claim, was that ordinary discretion and judgment of boys of his years. That is all we claim; no more and no less. Now, we claim that it was the duty of the street car company to take charge of this boy when he stepped his foot— When does a man become a passenger on a street car? When the man steps his foot on the step, and when a man steps his foot upon the step of the car, he becomes a passenger, whether he has got hold of the handles or not. It was the duty of the railroad company, when this boy stepped his foot upon the step of that car the first time, to look after him. It was their duty not to let him ride upon the steps of that car, a little nine-year old boy, was it not? It was their duty to see that he took a safe position, not only to tell him to do it, but to see that he did.

" *The Court:* I don't know but it is my duty to inform

you that the court cannot take that position, as a matter of law.

"*Mr. Hovey:* Would your honor do me the favor to tell me what position the court intends to take, for my information, in my argument to the jury?

"*The Court:* That this boy has all the rights that any boarding passenger would have at the time that he was on the ground and attempting to get on the car, if the jury find that to be the fact.    The reason why I make that suggestion is because of the exception of Mr. Phillips to that line of argument.

"*Mr. Hovey:* Now, I understand, if your honor please, I have a perfect right to argue to the jury what I claim to be the law, whether it is the law or not.

"*The Court:* Well, go ahead; it is for you to determine that.

"*Mr. Hovey:* I do not want to run contrary to the opinion of the court, but I am simply claiming what I think is the legal right.

"*The Court:* You have had lots of experience in the trial of cases.    I am not going to stop your argument. Make whatever argument you see fit.

"*Mr. Hovey:* Very well, I will go ahead and take my chances.    Now, I say then that it was not only their duty to tell him to get in a safe place when he got on that car originally, but it was their duty to see that he did it.    In view of the suggestion of the court, I am not going to pursue that; I am going to leave the truth of it to your inner consciousness, whether that is true or not."

Plaintiff recovered a verdict for $7,000, which the court refused to set aside.    In so refusing, the court said, among other things:

"As stated, two juries have passed upon the questions of fact involved in this action.    A crucial question of fact in each trial was whether or not the plaintiff received his injuries while boarding defendant's car after it had come to a full stop at Minnie and Twenty-Fourth streets.    At each trial plaintiff produced proof that the car came to a full stop at or near that point, and that plaintiff received his injuries by means of the starting of the standing car while he was in the act of boarding it.    At the first trial the plaintiff and a witness Alex Freeland testified that the car that injured plaintiff came to a full stop at the street crossing at Minnie street.    Several witnesses for defend-

ant testified that it did not so come to a full stop at that point or where plaintiff was injured. The court set aside the verdict of May 26, 1908, upon the finding that upon this crucial question the verdict was against the weight of the evidence. At the present trial plaintiff produced additional evidence that had a tendency to corroborate the evidence given by Freeland to the effect that he was in a position to see the car in question at the time plaintiff received his injuries. This evidence consisted of the testimony given by the witnesses Mary Hall, Earl Hall, and Violet McKenzie. Defendant also produced additional proof tending to support the claim that the car did not stop as claimed by plaintiff. This additional proof consisted of the testimony of the witnesses Henry Hoffman, Frank Mills, and Julius Phillips. The 24 jurors who heard and considered the conflicting evidence were as competent as jurors are likely to be at any number of trials of the case. From the proofs and results of both trials it is my conclusion that it is extremely unlikely that any different conclusion upon the essential facts will result from another trial. An examination of cases shows that more than one new trial after a second verdict for plaintiff on the same issues and on the ground that the verdict is against the weight of the evidence is very rarely granted. I conclude that it is not the court's duty to again interpose its judgment as to the weight of the evidence upon which the jury must have found for plaintiff. However the court may regard the question as to weight of all the evidence, the jury, upon competent evidence, now have a second time given credence and greater weight to the evidence as to defendant's negligence than that opposed to it. As to the allegations charging error because of prejudicial argument and statements made by plaintiff's counsel, the jury was so thoroughly instructed to eliminate all of plaintiff's other claims and to confine themselves to the sole question as to whether or not the conductor in charge of the car negligently started it from a standing position, thus causing plaintiff's injuries, that it is my conclusion that the jury followed these instructions and were not induced to render a verdict because of improper argument or prejudice."

OSTRANDER, C. J. (*after stating the facts*). The principal question of law is whether the court erred in instructing the jury concerning the duty of the conductor.

For the purpose of deciding this question, the circumstances to be considered are those related by plaintiff and have been stated.

In Booth on Street Railways, § 349, the doctrine with respect to the duty of those in charge of street cars is stated in these words:

"It is the duty of those in charge of the car, when signaled to stop for the purpose of discharging passengers, to ascertain who and how many of the passengers intend to alight at that place, to wait a sufficient length of time to allow them to alight in safety by the exercise of reasonable diligence, and, in any event, to see and know that no passenger is in the act of alighting, or is otherwise in a position which would be rendered perilous by the motion of the car when it is again put in motion."

See, also, *Highland Avenue, etc., R. Co.* v. *Burt*, 92 Ala. 291 (9 South. 410, 13 L. R. A. 95); *Railroad* v. *Mitchell*, 98 Tenn. 31 (40 S. W. 72); *Memphis Street Ry. Co.* v. *Shaw*, 110 Tenn. 467 (75 S. W. 713); *Medler* v. *Railroad Co.*, 126 N. Y. 669 (27 N. E. 854); s. c. (City Ct. Brook.) 12 N. Y. Supp. 930; *Finn* v. *Railway Co.*, 86 Mich. 74 (48 N. W. 696). The following instructions to a jury were approved in *Gilbert* v. *Railway Co.*, 160 Mass. 403 (36 N. E. 60):

"(1) A common carrier is bound to delay at a station or stopping place only a reasonable length of time for the purpose of allowing passengers to alight, unless those in charge know or have reason to know that some passenger has not got off, and is desiring to do so.

"(2) Passengers on a street car, when at their place of destination, should leave the car with reasonable dispatch, and after the car has stopped a reasonable time for passengers to get off, and as soon as all passengers destined for a particular place, or intending to get off there, have apparently left, and the conductor has no notice that any one else is trying to get off, then the conductor may properly start his car.

"(3) If the car has stopped a reasonable time, and the plaintiff did not step from the car until after the car had started, and was not at the time of starting the car apparently in the act of leaving it, and the conductor did not

know, or have any notice, or have reason to know, that the plaintiff was intending or desiring to get off there, then there was no negligence on his part in starting the car.

" (4) If the jury find that the car had waited a reasonable length of time for passengers to alight, and that the plaintiff delayed and was not apparently in the act of leaving the car when the bell was given for the car to start, and the conductor had no notice or knowledge of the plaintiff's intention or desire to get off, then there was no negligence in starting the car.

" 5. The conductor was not bound to know that every passenger had left the car that was intending to leave it at that place, in the absence of any sign of such intention, and if, after waiting a reasonable time, he took reasonable means to see whether passengers were at the time leaving the car, and no one appeared to be leaving it, and the conductor did not know, or have any reason to know, that the plaintiff was intending to get off, there was no negligence in starting the car."

No different rule should be applied when passengers are entering the car. *Kinkade* v. *Railroad Co.*, 9 Misc. Rep. 273 (29 N. Y. Supp. 747); *Dean* v. *Railroad Co.*, 34 App. Div. 220 (54 N. Y. Supp. 490); *Dudley* v. *Railway Co.* (C. C.), 73 Fed. 128; *Smith* v. *Detroit United Railway*, 145 Mich. 629 (108 N. W. 1024). In *Dudley* v. *Railway Co.*, *supra*, it was said:

" It was the duty of the conductor, before giving the signal to the gripman, to look around, and to have seen that all passengers to take passage at that place were safely on board; and failure in the performance of this duty cannot be excused by the fact that the conductor did not actually see the plaintiff."

We think the judgment should not be reversed because of the instructions which were given or because defendant's requests were refused. The instructions do not incorrectly state the applicable rule of law.

They do not, as of course they should not, state, or imply, that defendant was an insurer of plaintiff's safety, or that the conductor was bound, at the peril of defendant, to know that no one was entering any of the cars when they were started. The court might very properly

have incorporated in the charge reference to length of time the cars were stationary, to the rather unusual conduct of plaintiff, and we think it would have been error to refuse to do so if requested.

When street cars have stopped for such a time that any one capable of entering, or of alighting, with reasonable celerity, ought to have done so, the conductor, in the absence of notice to the contrary, may rely somewhat upon the presumption that the purpose of bringing the cars to a stop is accomplished. It is a matter of common knowledge, too, that a conductor would be less likely to notice such a change of position as plaintiff claims he made than the actions of those leaving or entering cars in the ordinary manner. The court was not asked to amplify his instructions in this respect, nor is the failure to do so assigned as error.

We find no merit in the assignments based upon rulings admitting and rejecting testimony.

We are impressed that for some reason, or reasons, a verdict opposed to the great weight of the evidence was returned by the jury. Whether this was due to the failure of the court to amplify the charge in the manner herein indicated, or to the inflammatory and improper arguments of counsel for plaintiff, some of which have been set out, or to both, it is, of course, impossible to determine.

Counsel for defendant made such objections to the argument referred to that the court gave it attention and stated a view of the law opposed to the one presented by counsel. But neither at that point, nor in the charge, was the jury told to consider only the law stated by the court. Counsel did not submit to the ruling of the court. On the contrary. And what was said might well have been treated by the jury as indicating that counsel's views were as likely to be right as those expressed by the court. The argument was calculated, and apparently intended, to do harm to the defendant and to induce the jury to determine the issue without regard to the limitations imposed

by the court in the charge. If it had not been made, we should have hesitated, and probably refused, to set aside the verdict.

Under the circumstances, we are impressed that it is our duty to reverse the judgment and order a new trial. It is so ordered.

STEERE, MOORE, BLAIR, and STONE, JJ., concurred with OSTRANDER, C. J.

McALVAY and BROOKE, JJ., concurred in the result.

BIRD, J., did not sit.