# CHARLESTON.

CHARLES S. CAIN, v. KANAWHA TRACTION & ELECTRIC Co,

Submitted January 20, 1920.    Decided January 27, 1920.

1.  CARRIERS—*Carrier Discharging Passengers is Bound to Highest Degree of Care Not to Start Cars When Any Passengers Are in Danger.* .

    It is the duty of an electric street railway company, in stopping its car to let off and take on passengers, to see that it remains standing a reasonable length of time for them to alight or board it, with safety, and that none of them is in a position of danger before starting the car.  In respect to this duty it is held to the highest degree of care.  (p. 437).

2.  SAME—*Reasonableness of Time in Stopping to Discharge Passengers Generally Jury Question.*

    What is a reasonable time for a street car to stop in discharging and receiving passengers, depends on the circumstances of each particular case, and is generally a mixed question of law and fact for jury determination.  (p. 435).

3.  TRIAL—*Numerical Preponderance of Witnesses Does Not Authorize a Peremptory Instruction.*

    When the question at issue depends upon conflicting testimony of witnesses, and there is no established fact or circumstance, determinative of the issue, the court is not warranted, on a mere numerical preponderance of witnesses, to give a peremptory instruction.  (p. 436).

4.  SAME—*Instruction Singling Out Evidence is Properly Refused.*

    An instruction calling the jury's attention to a particular, uncontrolling fact or circumstance, and thereby giving it undue prominence, is properly refused..  (p. 439).

5.  SAME—*Repetition of Instructions Unnecessary.*

    It is unnecessary to repeat instructions.  (p. 439).

Error to Circuit Court, Wood County.

Action by Charles S. Cain against the Kanawha Traction & Electric Company.  Verdict and judgment for plaintiff, defendant's motion to set aside the verdict and to grant a new trial overruled, and it brings error.

*Affirmed.*

*Van Winkle & Ambler* and *J. W. Vandervort,* for plaintiff in error.

*Reese Blizzard, R. E. Bolls, C. N. Matheny,* and *C. M. Hanna,* for defendant in error.

WILLIAMS, PRESIDENT:

This is the second writ of error awarded in this case. A review of it on the former writ of error is reported in 81 W. Va. 631, and the principles therein decided settle nearly all the questions here presented. Plaintiff's evidence is not materially different on the second trial from what it was on the first, and although the defendant has introduced some testimony in addition to what it presented before, it is only cumulative, and not decisive of the issues; hence it would not warrant the court to take from the jury, by the peremptory instruction, which was offered by defendant and refused by the court, the questions either of defendant's negligence or plaintiff's contributory negligence. In addition to the irreconcilable conflict in the testimony, the facts and circumstances, from which the alleged negligence of the defendant as well as the contributory negligence of plaintiff must be determined, are such as to make them mixed questions of law and fact, and therefore proper for jury determination. *Ewing* v. *Lanark Fuel Co.,* 65 W. Va. 726; *Foley* v. *City of Huntington,* 51 W. Va. 396; and 10 Ency. Dig. Va. and W. Va. Rep., p. 414. Plaintiff testified that he was sitting near the front end of the car when it stopped at Williamstown, the place of his destination, and as soon as the car stopped he picked up his suit case, raincoat and umbrella, started to the rear end of the car to alight; that when he got out on the platform and started down the steps he met a couple of ladies who were getting on the car, and backed out of their way to allow them to pass him; that as soon as they passed him he again started down the steps, and when he was near the bottom, perhaps on the step next to the bottom step, the car started with a jerk and threw him to the pavement and injured him. He does not say the car started with an unusual jerk, but that it started with the usual jerk peculiar to all electric cars on which he had traveled, that they all start with a jerk. He says he walked at his usual gait, "not so very fast

or not so very slow." Two or three witnesses for defendant say they heard some passenger warn plaintiff of the danger of trying to get off, before he reached the platform, but plaintiff says he did not hear it, and one of them, Mrs. Snodgrass, swears she met him in the aisle and warned him that the car was moving. Plaintiff is dull of hearing, and swears he did not hear the warning, if any was given, and he contradicts Mrs. Snodgrass respecting his location when the car started, and says it did not start until he had started down the steps and was near the bottom step. The jury are the sole judges of the credibility of the witnesses, and they had a right to accept plaintiff's testimony in preference to that of the other witnesses. Mrs. Snodgrass is contradicted, as to plaintiff's location, not only by his own testimony, but also by that of the motorman, who says that, before starting the car, he looked back and did not see plaintiff in the aisle or on the platform; that he saw two or three ladies in the aisle, and could have seen plaintiff if he had been there. This evidence tends to corroborate plaintiff respecting his location on the steps when the car started. The court could not take the question from the jury on the mere numerical preponderance of witnesses. *Harman v. Appalachian Power Co.*, 77 W. Va. 48. Mrs. Snodgrass was not a witness at the former trial, and stated, as an excuse for her absence, that she was sick, but on cross-examination admitted she had not been summoned to the first trial. Plaintiff's contention is, as supported by his testimony, that the car did not stop a reasonable length of time to allow him to alight in safety by the exercise of reasonable diligence. He was then between sixty-eight and sixty-nine years of age, encumbered with a suit case, a raincoat and umbrella, which no doubt tended, in some measure, to impede his progress. He does not attempt to fix the length of time the car had stopped, otherwise than by saying it did not give him time to walk from the front of the car back to the platform and down the steps to the pavement, by the exercise of reasonable diligence. On the other hand, some of defendant's witnesses fix the time of the stop at about two minutes, two of defendant's servants, the conductor and motorman, so fix the time. Defendant's line crosses the Baltimore and Ohio R. R. tracks immediately beyond the point

where the stop was made, and the front of the car was about ten or twelve feet from the Baltimore and Ohio tracks when it stopped. A rule of the defendant company required the conductor, before allowing his car to pass over the tracks, to go before it and see that the way was clear. He did so on this occasion, and when he had reached the center of the tracks and saw there was no danger, he signaled the motorman to come forward. He testified that he assisted the passengers to alight and others to board the car, before going forward, and that he observed no one in the act of getting off when he left the car. The car is fifty-three feet in length, in the clear, and the distance of the front of it from the B. & O. tracks being twelve or fifteen feet, the conductor was required to walk a distance of from sixty-five to sixty-eight feet, before he gave the signal to the motorman to start, whereas plaintiff had only to walk hardly the full length of the car, descend the steps and alight in the same length of time. But having to stop and move back after he had reached the platform and started to descend the steps, in order to allow the two ladies to pass him, according to his evidence, and being burdened with a suit case, raincoat and umbrella may have so retarded his progress, that more time was necessary for him to alight than was required for the conductor to reach the railroad tracks and signal the motorman, and considering that the jury may not have accepted the conductor's testimony as true, wherein he says he remained to assist the passengers off and then others on the car before leaving it, which they had a right to do in view of the apparent discrepancy in his testimony on the two trials, the jury were justified in reaching the conclusion, which they evidently did, that the time of the stop was unreasonably short. The question, what is a reasonable time, depends upon the circumstances of each particular case. It was the duty of defendant's servants to exercise the highest degree of care to see that its passengers were given a reasonable time to alight and that none of them was in a position of danger before starting the car. There is no established and controlling fact or circumstance to overcome plaintiff's testimony, which is sufficient to support the verdict. As we view it, the question at issue depends solely upon conflicting testimony of witnesses. In their brief, counsel for de-

fendant lay much stress upon the admitted fact that plaintiff fell with his head in the direction in which the car was going, and the established fact, undisputed, that he landed on the pavement from eight to ten feet forward of the place where the rear end of the car was before it was started. These circumstances, they insist, conclusively show plaintiff's theory to be false, because it contradicts the law of gravity. They insist that, if plaintiff's testimony is true, his feet would have been in the opposite direction and he would have fallen where the car stood. But plaintiff does not say that he was on the bottom step, but on the step next to the bottom, he thinks, and in view of the fact that the steps are narrow and steep, eleven inches high and three in number, and protected on either side, the sudden jerk may have first thrown his body against the rear guard and then forward against the car, before throwing him off, in which case his body would naturally be carried forward. This is highly probable, and very likely the theory entertained by the jury as a proper explanation of the manner in which he fell.

If plaintiff was so near the bottom of the steps when the car started and thought he would be subjected to greater danger by remaining there, than to try to step off, whether he was guilty of negligence in attempting to do so was a question for the jury, even according to defendant's theory of the case that he voluntarily stepped off after the car was in motion.

The former opinion in this case, and the principles announced in *Normile* v. *Traction Co.*, 57 W. Va., 132; and *Harman* v. *Appalachian Power Co.*, *supra.* determine most of the questions presented.

The principal argument in brief of counsel for defendant is based on the refusal of the court to give a peremptory instruction for defendant, based on the ground, either that no negligence on the part of defendant is established, or that the verdict is contrary to the great weight of the evidence, and these points we have disposed of. But defendant complains also of the giving of plaintiff's instructions Nos. 1, 3, 7 and 8. The only objection urged against Nos. 1 and 3 is that they are abstract. We do not think this criticism is good, but even if it were, we can clearly see that the jury could not have been prejudiced by them. Numbers 7 and 8 are the same as plaintiff's Nos. 2 and

8, which were given on the former trial, with only a slight modification to answer the criticism of them in the former opinion. As given at the first trial, they told the jury that it was negligence to start the car "without warning," and this court expressed the opinion that the phrase, "without warning," might have misled the jury to believe that some direct, personal warning to plaintiff was necessary, and to meet that criticism, they were amended so as to read, "without warning of some kind." The sounding of the gong is the only warning which defendant gave, and the jury may have believed, as they had a right to do from the testimony of the motorman, that the starting of the car was instantaneous after ringing the gong, and, therefore, was of no service to plaintiff as a warning, even if they believed it was sounded, which is disputed.

The refusal of the court to give defendant's instructions Nos. 3, 7, 8, 9, 10, 11 and 14 is also assigned as error. All of them are fully covered by others which were given, except No. 9, and it was properly refused because it would have been confusing and misleading. It would have told the jury that, if they believed the conductor waited at the rear steps a reasonable time, until some passengers had gotten off and others had gotten on, and "until no other passenger was apparently attempting to get off or board said car," he had the right, and it was his duty, to leave the car, and go forward to the Baltimore and Ohio Ry. Company's tracks, and see that the way was clear and "there was no negligence on the part of the conductor under such facts and circumstances in leaving the car." This instruction would lay too much emphasis upon a single uncontrolling fact and thereby confuse the jury as to the main issue. The conductor may not have been negligent in leaving the car, even if he left before any of the passengers had gotten off or on it. The negligence consisted not in leaving the car, but in signaling it to start before plaintiff had a reasonable time to alight.

The refusal of the court to admit as evidence photographic copies of three affidavits, certified by the Commissioner of Pensions as being photostats of originals filed in his office, by plaintiff when he applied for a pension on account of alleged disabilities resulting from military service in the Civil War is complained of. They were offered to contradict plaintiff's testi-

mony respecting the nature and severity of the injury complained of, as resulting from defendant's negligence. On cross-examination he admitted making the affidavits and defendant's counsel questioned him at length respecting the matters therein alleged. They would have tended to prove no more than plaintiff admitted, hence it was not error to exclude them.

For the foregoing reasons the court properly overruled defendant's motion to set aside the verdict and grant it a new trial, and we affirm the judgment.

*Affirmed.*