## VIRGINIA PUBLIC SERVICE CO. v. SILVER.

### No. 3539.

Circuit Court of Appeals, Fourth Circuit.

Jan. 4, 1934.

E. M. Braxton, of Newport News, Va., and J. M. Perry, of Staunton, Va., for appellant.

J. L. Abbot, of Lynchburg, Va. (A. D. Barksdale, J. Wallace Ould, and Barksdale & Abbot, all of Lynchburg, Va., Jones & Ward, of Asheville, N. C., and Morgan, Stamey & Ward, of Waynesville, N. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a judgment in favor of the plaintiff in an action instituted to recover damages on account of personal injuries sustained by a passenger as the result of the negligent operation of a street car. There was a verdict in favor of plaintiff for the sum of $25,000, all of which in excess of $6,500 was remitted by plaintiff, upon intimation by the court that the verdict would be set aside as excessive if this action were not taken. From judgment on the verdict as thus reduced, the defendant has appealed, claiming that there was error in refusal to direct a verdict in its favor, in refusal to give certain instructions prayed, and in the charge of the court on the question of negligence.

There was evidence tending to show that plaintiff, a woman fifty-one years of age, was a passenger on one of defendant's street cars in the city of Norfolk, Va., on June 26, 1931. As the car was approaching Sycamore avenue, where she intended to alight, she gave the customary signal for it to stop; and it came to a stop at Sycamore avenue in accordance with the signal. Plaintiff then arose, carrying a number of bundles in her hands, and proceeded to the front of the car where she could readily have been seen by the motorman had he glanced at the mirror which was placed in such way as to afford him a full view of the passengers in the car.

She says that she was in the act of stepping from the main body of the car to the front platform, which was nine inches lower than the floor of the main body, when the car suddenly started forward, without warning or signal, causing her to lose her balance and be thrown against the brake handle or some other object at the front of the car. She further says that, just as she has regaining her balance, the car suddenly stopped, and she was again thrown against this object, and that, as the result of being thrown thus by the sudden starting and stopping of the car, she sustained painful and serious injuries, which were described at length by the medical witnesses, but which have no bearing on the questions of law presented by the appeal. Defendant's motion for directed verdict is based upon three grounds: (1) That, as plaintiff was in the body of the car and not alighting from the platform, there was no negligence in starting the car forward without warning; (2) that plaintiff was guilty of contributory negligence as a matter of law because she did not make use of the "handholds" with which the car was equipped; and (3) that plaintiff's version of the occurrence is contradicted by the physical facts of the case, it being contended that she could not have been thrown forward by a forward movement of the car.

The argument upon the first ground is based upon a line of cases holding that it is not necessary to delay the starting of a street car until a passenger entering has taken a seat, but that it may be started as soon as he is fairly on the car and in a place of safety (see Boston Elev. R. Co. v. Smith (C. C. A. 1) 168 F. 628, 633, 23 L. R. A. (N. S.) 890 and cases there cited), and upon decisions of the Supreme Judicial Court of Massachusetts holding this rule applicable to a passenger leaving but still within the body of the car. Chandler v. Boston Elevated R. Co., 261 Mass. 230, 158 N. E. 669; Gollis v. Eastern Massachusetts, etc., Co., 254 Mass. 157, 149 N. E. 607. We think, however, that there is a vital distinction between the case of a passenger entering and that of a passenger leaving a street car. Expedition in the operation of the car demands that the car proceed as soon as the entering passenger is in a place of safety; and the passenger, knowing this, must be on the lookout for the ordinary jerks incident to starting as soon as he is well on the car. As was well said by Judge Colt in Boston Elev. R. Co. v. Smith, supra: "The practical reasons underlying this rule are obvious. The public demands as rapid transportation on street cars as conditions will permit. To this end it is necessary that there should be as little delay as possible in the frequent stopping of the cars to take on passengers. If, therefore, it were the duty of the conductor to wait until each passenger is seated before giving the starting signal, it would result in much delay, and consequently the running time would be much slower; and hence it has become the common practice, under ordinary circumstances, for the conductor to ring the starting bell as soon as the passenger is fully on the car; and it may be said that the ordinary passenger anticipates this as one of the usual incidents in the operation of street cars, and is accordingly on the lookout to protect himself from any serious consequences resulting therefrom."

In the case of a passenger leaving the car, however, the situation is very different. His contract with the street car company is that he be discharged safely from the car; and when the car has been stopped on his signal in order that he may be discharged, nothing is to be gained in expedition of service or otherwise by starting it before he has succeeded in getting off. He has a right, therefore, to assume that it will not be so started without signal to him. The rule properly applicable in the case of the passenger leaving the car was stated by the Supreme Court of the United States in Washington & Georgetown R. Co. v. Harmon's Adm'r, 147 U. S. 571, 583, 13 S. Ct. 557, 561, 37 L. Ed. 284, as follows: "The duty resting upon the defendant was to deliver its passenger, and that involved the duty of observing whether he had actually alighted before the car was started again. If the conductor failed to attend to that duty, and did not give the passenger time enough to get off before the car started, it was necessarily this neglect of duty that did the mischief. It was not a duty due to a person solely because he was in danger of being hurt, but a duty owed to a person whom the defendant had undertaken to deliver, and who was entitled to be delivered safely by being allowed to alight without danger."

Some cases lay down the rule that the car need be held stationary to allow a passenger to alight only for a reasonable length of time, and that the duty of the conductor or motorman before starting is merely to exercise due care and diligence to see that no person is in the act of alighting. See note 56 A. L. R. at page 992, and cases there cited. And even under this rule, there is undoubtedly sufficient evidence here to take the case to the jury; as, according to plaintiff's testi-

mony, she was in the act of stepping down from the body of the car to the platform when the car started. But the rule supported by the great weight of authority is that laid down by the Supreme Court of the United States in the Harmon Case, supra, to the effect that where a street car comes to a stop to allow a passenger to alight, the conductor or motorman must hold it stationary until all who wish to alight are safely off, and he must see and know before putting the car in motion again that no one is in the act of alighting or in any other perilous position. See cases cited in note to 56 A. L. R. at page 990, and particularly Fanshaw v. Norfolk & P. Traction Co., 108 Va. 300, 61 S. E. 790; Cain v. Kanawha Traction & Electric Co., 85 W. Va. 434, 102 S. E. 119, former appeal 81 W. Va. 631, 95 S. E. 88; Asbury v. Charlotte Electric R. & Power Co., 125 N. C. 568, 34 S. E. 654; and Keeley v. City Electric R. Co., 168 Mich. 79, 133 N. W. 1085. And see, also, Reese v. Detroit United R. Co., 159 Mich. 600, 124 N. W. 539; Virginia Ry. & Power Co. v. Bailey, 123 Va. 250, 96 S. E. 275, 276; and 4 R. C. L. 1242, and cases cited.

The second and third grounds upon which defendant claims that it was entitled to a directed verdict may be disposed of briefly. As plaintiff had the right to assume that the car would not be started until she was safely off, she was guilty of no negligence in not making use of the handholds by which passengers might steady themselves against its movements. As to the contention that her version of the occurrence was contrary to the physical facts, no one can say with certainty what movement would have resulted from muscular reactions caused by the car starting forward as she was in the act of stepping down to the platform. She testified positively that she was thrown forward, and any question as to the reasonableness of her testimony was one for the jury to determine. Frates v. Thomas (C. C. A. 10) 57 F.(2d) 535.

The defendant complains of the refusal of the court to give two instructions, one to the effect that plaintiff was guilty of contributory negligence if she failed to use the handholds to which we have referred, and the other to the effect that the defendant was not liable for jolts, jerks and lurching incident to the ordinary starting and stopping of the car. In the light of the rule which we have held properly applicable to the case, it is clear that both of these instructions were properly refused. For like reason there is no merit in defendant's

objection to the court's instruction to the effect that where a street car has stopped on a passenger's signal to let him off he has a right to assume that it will not be started until he has had opportunity of doing so, and that the duty of the passenger to protect himself against the natural movements of the car has application to the movements which the passenger has reasonable grounds to anticipate, not to movements when the car is stopped for the purpose of affording him an opportunity to alight.

The action of the lower court by which plaintiff was required to remit all of the verdict in excess of $6,500 as a condition of its being allowed to stand is not the subject of exception on this appeal; but we take this opportunity of expressing our approval of the course adopted by the trial judge. The verdict was manifestly excessive; and the judge was right in intimating that he would set it aside unless voluntarily reduced. Appellate courts have no power to correct miscarriages of justice resulting from awards of excessive or insufficient damages; but judges of trial courts do have the power, and they should not hesitate to exercise it where injustice would otherwise result.

There was no error, and the judgment appealed from will be affirmed.

Affirmed.